## THE CIRCUIT COURT OF ST MARY'S COUNTY MARYLAND

The Estate of Katherine Sarah Morris
By Court Appointed Administrator
Marguerite R. Morris
23665 Halford Lane
Hollywood, Maryland 20636

Marguerite R. Morris
23665 Halford Lane
Hollywood, Maryland 20636
Ph 301-408-8833

Willie J. Morris
799 White Sands Rd
Lusby, Maryland 20657
Ph. 240-481-4809

       Plaintiffs,
  vs.

Isaac Jerome Goodwin
203 Lower Glen Circle
Blythewood, SC 29016
Serve Attorney – James E. Crawford, Jr. Esq.
1435 Sulphur Spring Rd
Arbutus, Maryland 21227

Latoya King
c/o CMD, 533D Support BN (BSB CSB)
ME)(-), Bldg. 200,
Ft Totten, New York, 11359-1016

Damaris Rosa Brown
8208 Ice House Court  Apt B
Ft Belvoir, VA 22060

Silver Goodwin
203 Lower Glen Circle
Blythewood, SC 29016
Serve Attorney –
Michael A. Brown/Jonathan A. Singer
Miles & Stockbridge, P.C.
10 Light Street
Baltimore, MD 21202

And John Doe and Jane Doe

    Defendants

Case No.: C13 - 911

-1-

USAA Confidential

0901119c8d5be4f3

## COMPLAINT FOR WRONGFUL DEATH

### FACTS

Plaintiffs, the Estate of Katherine Sarah Morris, Marguerite R. Morris and Willie J. Morris, complain and for causes of action alleges as follows:

1. The Plaintiff Estate of Katherine Sarah Morris brings a survival action pursuant to Section 7-401 of the Estates and Trusts Article.

2. Plaintiff # 2 Marguerite R. Morris is an individual, the mother of the deceased and is appointed by the Orphans Court for St. Mary's County Maryland as the Administrator of the Estate of Katherine Morris, and at all times mentioned in this complaint is a resident of St. Mary's County, Maryland.

3. Plaintiff # 3 Willie J. Morris is an individual, the father of the deceased, and at all times mentioned in this complaint is a resident of Calvert County, Maryland.

4. The Defendant Isaac Jerome Goodwin is an individual, was a Staff Sargent in the United States Army stationed at Ft Bragg NC, was the husband of the now deceased Katherine Sarah Morris. His last known address was 203 Lower Glen Circle, Blythewood, SC 29106. The Defendant Isaac Goodwin was exited from United States Army on April 25, 2013 with a general discharge.

5. Defendant Latoya King (alias Kristina Robbins) is an individual, is a Staff Sargent in the United States Army Reserve, who per her own admission was the 3/1/2 year mistress of Defendant Isaac Jerome Goodwin, was previously a resident of Ft Belvoir, VA stationed out the 55th Sustainment Brigade, and whose last known address is c /o CMD, 533D Support BN (BSB CSB) Ft Totten, New York.

-2-

USAA Confidential

0901119c8d5be4f3

6.  Defendant, Damaris Rosa Brown is an individual, is an employee of the Department of the Army, 55th Sustainment Brigade, is a friend of Defendant Isaac Goodwin and Defendant King, and whose last known address is 8208 Ice House Court, Apt B. Ft Belvoir, Virginia.

7.  Defendant, Silver Goodwin is an individual, is the mother of Isaac Goodwin and whose last known address is 203 Lower Glen Circle, Blythewood, SC 29016.

8.  Plaintiffs are informed and believe that at all times mentioned in this complaint that Defendants were negligent and malicious in their actions and contributed to the death of Katherine Sarah Morris.

9.  Plaintiffs are informed and believe, and based on that information and belief alleges, that each of the Defendants are legally responsible for the events and happenings referred to in this complaint; and unlawfully caused the injuries and damages to Plaintiff's alleged in this complaint.

10.  Plaintiffs were the parents of the late Katherine Sarah Morris who died on May 6, 2012 as a result of what is reported as carbon monoxide poisoning from a charcoal grill.

11.  Katherine Sarah Morris also suffered burns to the disfigurement of her left ear and face.

12.  The deceased death was a result of the emotional trauma, manipulation and stress inflicted upon her by the Defendants most of whom were more than 9 years her senior.

13.  Katherine Sarah Morris who was for the first time living away from home as a student on the University of Maryland campus was preyed upon because of innocence and her lack of worldly knowledge.

14.  None of the Defendants exercised a duty of care that would have been reasonably expected of persons toward others and the public with watchfulness, attention, caution and prudence that reasonable persons in that same circumstances would have.

-3-

USAA Confidential

15. The Defendants actions did not meet this standard of care, therefore their actions are considered negligent, and any damages resulting may be claimed in a lawsuit for negligence and be considered culpable negligence under the "Last Clear Chance Doctrine".

16. The Plaintiffs allege that Katherine Sarah Morris was a victim of cyber bullying on May 2, 2012, that contributed to her mental deterioration.

17. The Plaintiffs allege that prior to May 2, 2012; the Defendants knew from a December 22, 2011 suicide incident that the May 6, 2012 outcome was probable.

18. Therefore the Defendants already knew the deceased to be a vulnerable adult and the subsequent sequence of events facilitated by them contributed to her death.

19. Therefore they were negligent under the "Last Clear Chance Doctrine" and it is believed that the defendants deliberately conspired to push the late Katherine Sarah Morris to suicide.

20. As a direct and proximate result of the Defendants negligence and continued intentional infliction of emotional abuse, marital fraud, perpetration of internet fraud, and adulterous relationships Katherine Sarah Morris was mentally coerced in committing suicide.

21. Plaintiffs Marguerite R. Morris and Willie J. Morris the parents of Katherine Sarah Morris sustained solatium loss, pecuniary loss, mental anguish, emotional pain and suffering, loss of society, loss of companionship, loss of comfort, loss of attention, and loss of advice.

22. This initial Complaint was timely filed within three years after the death of Katherine Sarah Morris pursuant to Section 3-904 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland.

## BACKGROUND

23. The deceased Katherine Morris met the Defendant Isaac Goodwin during the early months of 2011.

-4-

USAA Confidential

0901119a8d5be4f3

24. In or around June of 2011 the Defendant Isaac Goodwin received an Article 15 from the United States Army for misappropriation of government funds.

25. As a result in July of 2011 financial sanctions were levied on the Defendant Isaac Goodwin of $545 a month and in addition a military benefit known as the Basic Allowance for Housing was reduced to approximately $409 a month.

26. The Basic Allowance for Housing is a military financial benefit that is increased for persons that are married and amounts can vary depending upon the geographical location of the soldier.

27. The Defendant's Isaac Goodwin credit report reflected that he was in dire financial straits.

28. In or around August 2011 because of past due payments the Defendant Isaac Goodwin had received a notice of repossession for the aprox. $4000 worth of rims on his car.

29. On August 3, 2011 the Defendant Isaac Goodwin persuaded Katherine Sarah Morris a 4th year University of Maryland student living in an on campus University of Maryland apartment to marry him stating he loved her.

30. Katherine Morris married the Defendant Goodwin in a civil ceremony in Arlington County, Virginia on August 3, 2011.

   a. No children were born of the purported marriage.

   b. No marital property was acquired during the purported marriage.

   c. No residence was shared during the purported marriage.

   d. No wedding rings were exchanged during the purported marriage.

   e. No name changes were made during the purported marriage.

31. The Defendant Isaac Goodwin persuaded the deceased to keep the marriage secret.

USAA Confidential

0901119c8d5be4f3

32. In August 2011 following the marriage the Defendant Isaac Goodwin returned to Ft. Bragg, NC where he presented a marriage license with fraudulent information for spousal housing benefits.

33. In Aug. 2011, Sept. 2011, Oct. 2011, Nov. 2011, Dec. 2011, and Jan 2012 the Defendant received and kept for his own personal use approx. $700 a month allowance and did not provide any care or benefits to Katherine Sarah Morris.

34. Katherine Sarah Morris, fragmented and deeply disillusioned slipped into depression and over the course of 5 months dropped over twenty five pounds causing her family great concern.

35. During this time the deceased was herself in financial crisis each month facing the possibility of eviction from her on campus apartment: working 2 part-time jobs; and carrying a full academic load in college. During this time the Defendant Isaac Goodwin never informed the late Katherine Sarah Morris of the monthly he received on her behalf.

36. During this time:

    i. The Defendant Isaac Goodwin did not provide her with a military ID card.

    ii. The Defendant Isaac Goodwin did not enroll her for medical benefits.

37. The deceased Katherine Sarah Morris was a Christian young lady actively committed to her faith who valued her marriage vows.

38. Katherine Sarah Morris had the reasonable expectation that the marriage was for love and that the relationship would be monogamous.

39. Katherine Sarah Morris became even more distraught discovering the Defendant's adulterous relationships with several other women.

USAA Confidential

0901119c8d5be4f3

40. The Katherine Sarah Morris did not know that the Defendant Isaac Goodwin's sole purpose for the marriage was to increase his cash benefits from the military.

41. Katherine Sarah Morris by her own admission discovered that the Defendant married her for fraudulent reasons.

42. Katherine Sarah Morris discovered that the Defendants Isaac Goodwin, Latoya King and Jane Doe's maintained ongoing adulterous relationships over the course of the 9 month marriage.

43. The Defendant Isaac Goodwin was charged and convicted of adultery with a woman other than Defendant King by the United States Army after the death of his wife Katherine Sarah Morris.

44. Following the Dec 22, 2011 incident the Plaintiff Marguerite R. Morris contacted the Defendant Silver Goodwin by phone and reached out to her via a Facebook communication. The circumstances were explained. When asked by the Plaintiff Marguerite R. Morris for assistance in addressing the circumstances she failed to acknowledge the existence of any potential harm to the late Katherine Sarah Morris. Her denial and by her refusal to realistically accept the alleged sociopathic behaviors of the Defendant Goodwin, the Defendant Silver Goodwin contributed to the malicious harm perpetrated on the Deceased.

45. The late Katherine Sarah Morris herself reached out in a loving way to the Defendant Silver Goodwin and her response was to block both the Plaintiff and the Deceased attempts to communicate. This action greatly contributed to the mental anguish and depression of the late Katherine Sarah Morris who referenced the devastating effect of this treatment in her last note to the family just hours before her death on May 5, 2012.

46. The Defendant Silver Goodwin has sought to make herself a party to the $100,000 insurance payout on the late Katherine Sarah Morris' life.

47. The preponderance of this information drove the Katherine Sarah Morris to her death on May 6, 2012.

-7-

USAA Confidential

0901119c8d5be4f3

48. By the preponderance of her grief if Katherine Sarah Morris had known that the Defendant Isaac Goodwin had several ongoing sexual relationships with other women she would not have married him.

49. The "Last Clear Chance" doctrine is created by the December 22, 2011 incident. After and following this incident the Defendants were aware of the potential danger to the deceased and could have stopped their destructive, malicious and negligent behaviors.

50. December 21, 2011 the Plaintiff notified the Defendant Isaac Goodwin of her intent to commit suicide.

   a. In her severe mental anguish the Katherine notified the Defendant Isaac Goodwin.

   b. The Defendant Isaac Goodwin demonstrated no duty of care.

   c. The Defendant Isaac Goodwin did not notify emergency personnel of that communication.

51. On December 22, 2011 the Plaintiff continuing to be both physically and mentally overwhelmed, informed her mother Marguerite Morris of her state of mind. Her mother responded by contacting emergency personnel to respond at the University of Maryland Campus over ninety miles away.

52. The Plaintiff was transported by emergency personnel and while hospitalized informed her parents Marguerite Morris and Willie J Morris (RETAF) about the marriage.

53. The Plaintiff was hospitalized for an emergency evaluation.

54. On December 23, 2011 when notified of his wife's hospitalization the Defendant stated that the military would not release him to travel. Later reports disclose that his military supervisors were not aware of the 5 month old marriage.

USAA Confidential

0901119c8d5be4f3

RECEIVED 10/02/2013 17:30

55. On the eve of December 24, 2011 from a parking lot the parents of Katherine Sarah Morris initiated contact on her behalf to the American Red Cross.

56. On the afternoon of Dec 27, 2011 the Defendant Isaac arrived in Maryland, a full 24 hours after his emergency leave started.

57. The Defendant was informed before his arrival of the need to attend a family discharge planning meeting for Katherine Sarah Morris facilitated by a Washington Adventist Hospital mental health professional.

58. On or about Dec 28, 2011 the Defendant Isaac Goodwin, along with the parents of Katherine Morris, attended this meeting.

59. During this meeting the Defendant Isaac Goodwin continued perpetrating mistruths about his benefits for his spouse. He stated the monthly benefit was $70-80 per month and did not express an interest in putting in place the required military medical insurance.

60. On or about Dec 29, 2011, the Defendant Isaac Goodwin attended the follow-up on her mental health appointment with the deceased; therefore, the Defendant should have known of her fragile state of mind.

61. Defendant Isaac Goodwin, continuing his abusive and cruel manipulation of the late Katherine Sarah Morris for financial gain, during this emergency medical visit he spent the day hours with Katherine Sarah Morris as her husband, opting to spend the overnights committing adultery with Latoya King at Ft. Belvoir, VA. This demonstrated a continuous ongoing disregard for the wellbeing of the deceased.

62. According to Defendant King (alias Kristinarobbins) her sexual involvement with the Defendant Goodwin was during his entire 9 month marriage to the deceased.

63. Jan 3, 2012 the mother of the late Katherine Sarah Morris, gravely concerned for her child's wellbeing and safety, emailed a letter requesting assistance to a commanding officer

USAA Confidential

0901119c8d5be4f3

(Major Wang) of the Defendant Sgt. Isaac Goodwin. This letter was requested to be copied to a Captain in the Division (that was to facilitate a conference call on Jan 3, 2012) This letter was also sent to the 82nd Airborne Division of the Inspector General's office at Ft. Bragg, North Carolina. This letter stated "It is my belief that in the aftermath of these events, that Specialist Goodwin's continued disregard for the truth represents a disregard for human life, a blatant disrespect for the uniform he wears and the country he serves. If this is not a marriage of convenience then I would like to hear from him exactly what a "$70 - $80 month" benefit is in the military pay scale. Perhaps it's the very expensive rims on his car." "I respectfully request the assistance of your office and any resources at your disposal to deal quickly and swiftly with this soldier. His actions have all the appearance of being an attempt to defraud the United States government for personal gain, at the expense of the trust and emotional wellbeing of my daughter, Katherine Goodwin Morris"

64. Continuing to falter in providing full benefits for his distraught spouse in Feb, 2012 Defendant Isaac Goodwin received a direct order to put in place financial support for his spouse.

65. The Defendant Isaac Goodwin opted to put in place a $100,000 life insurance policy on Katherine Sarah Morris with no suicide clause.

66. Each month after being ordered to put in place the appropriate benefits, the Defendant Isaac Goodwin was verbally abusive and badgered the late Katherine Sarah Morris over money.

67. On or about March 9, 2012 the Plaintiff Katherine Sarah Morris saw electronic communications between the Defendant Isaac Goodwin and his mistress, Defendant King. In this communication Defendant King using the alias Kristinarobins@gmail.com discusses with

-10-

USAA Confidential

the Defendant Isaac Goodwin about his having married "someone you know likes/cares about you for financial gain is crazy....Or should I say just plain STUPID, DUMB".

68. On the morning of March 9, 2012 the late Katherine Sarah Morris after seeing the above communications placed a call to her mother the Plaintiff Marguerite R. Morris. This call lasted seventy nine minutes and in it the mentally devastated Katherine Sarah Morris asked the question "Ma, why doesn't he love me."

69. The Defendants continued their intentional infliction of emotional distress and as a result created a "res ipsa loquitur" situation.

70. The Plaintiffs allege and believe that the Defendants jointly conspired for financial gain to harm Katherine Sarah Morris by pushing her to suicide:

    a. On April 27, 2012, continuing to keep the vulnerable adult on an emotional rollercoaster the Defendant Isaac Goodwin's last known electronic message to the deceased was that he loved her, wanted the marriage to work, and when she asked "are you sure" his response was "have faith".

    b. On April 27 – 30th of 2012 and on May 1, 2012, the deceased sent several messages to Defendant Isaac Goodwin, stating "Hi", "Hello" Are you okay" "Are we okay" He did not acknowledge or respond.

    c. The next communication the mentally and emotionally fragile Decedent received is from his mistress Defendant King and their associate Defendant Brown which included the following series of electronic communications.

71. Electronic records show that on Wednesday, May 2, 2012 at approximately 2:07pm the Defendant's mistress Defendant Latoya King using the alias Kristinarobbin and the Defendant's Isaac Goodwin's friend Defendant Damaris Brown initiated an email to the

UsAA Confidential

0901119c8d5be4f3

Plaintiff from their office at the 55th Sustainment Brigade. Electronic records show there were also 3 phone calls placed to Katherine Sarah Morris.

72. In this email the mistress Defendant King used the alias Kristina under the cover of Damaris Carabello (alias Defendant Damaris Brown) used the email address of bluerush007@gmail.com King gave the telephone number of 347-931-8643.

73. The Defendants continued to mentally batter and intentionally inflict more emotional pain and suffering. In an email dated May 2, 2012 sent at 2:20 pm from damaris caraballo bluerush007@gmail.com Katherine Sarah Morris was called an "Email gangster!!!!!.

74. On May 2, 2012 at 5:10 p,m, another email was received by Katherine Sarah Morris from bluerush007@gmail.com it stated "Yes, we have been intimate regularly for the past 3 ½ years and we still communicate and we are trying to work things out as well and I'm definitely not his ex." A military investigation confirms that these emails were from Defendant King using the Kristina alias.

75. The deceased Facebook and Twitter postings over the next 72 hours reflect her deteriorating mental state.

76. On Saturday, May 5, 2012, at approx.5:45 pm Katherine Sarah Morris walked out of her College Park on campus apartment with apparent intent of never returning. Her body was found in the early morning hours of May 6, 2012 at the of Anne Arundel Community College satellite building parking lot located at the Arundel Mills Mall.

77. On her computer screen was the Facebook account and photos from Defendant Brown who was a friend of the Defendant Isaac Goodwin and his mistress, worked at the 55th Sustainment Brigade and who had befriended the Katherine Sarah Morris' on Facebook back in March 2012.

-12-

USAA Confidential

78. In the ensuing police investigation, Defendant Brown gave a false and misleading statement.

79. On Saturday May 5, 2012, at approx.7:15 pm the distraught and mentally defeated Katherine Sarah Morris tweeted "When it's all said and done all you really have is yourself."

80. On Saturday May 5, 2012 at approx., 8:32 pm the distraught and mentally defeated Katherine Sarah Morris posts "The Lord is close to the brokenhearted and saves those who are crushed in spirit. (Psalm 34:18 NIV)".

81. On Saturday May 5, 2012 at approx.9:49 pm the distraught and mentally defeated Katherine Sarah Morris posts "Waiting for this to be over".

82. The Katherine Sarah Morris left on her phone the message that "she did not deserve what he did to her and to others," It completely debilitated her.

83. The Defendant Isaac Goodwin did make arrangements, according to military documents for his mistress Defendant King to pick him up at the airport upon his arrival.

84. Defendant King was then issued a direct order to cease communication with the Defendant Isaac Goodwin.

85. The Defendant Isaac Goodwin did not attend the funeral of his deceased wife.

86. The marriage was on the Defendant Isaac Goodwin's part unilateral fraud.

87. Katherine Sarah Morris was devastated by the abuse of trust and alienation of affection.

88. The Defendant Isaac Goodwin entered into the marriage, never intending, when married to remain faithful to the spouse.

89. Evidence shows that the Defendant Isaac Goodwin did not cease acting as a single person during the entire duration of the 9 month marriage.

-13-

USAA Confidential

0901119c8d5be4f3

90. The Defendant Isaac Goodwin subjected the deceased to relentless mental anguish, pain and deception during the 9 month marriage.

91. The Defendants showed a blatant disregard for the wellbeing of the deceased.

92. The Defendant Isaac Goodwin continued his sexual relationships with several other women during the course of the marriage and was convicted of adultery by the United States Army after the death of the Plaintiff with an unidentified woman.

93. The Defendant's gross negligence is evidenced by this culminating in the Katherine Sarah Morris' death that was proximately caused by the malicious, negligence and unconscionable acts of the Defendants.

94. The Defendant, prior to defrauding the deceased into the marriage inquired of a person named Melissa Mayle to do the "marriage thing".

95. The Katherine Sarah Morris was the victim of fraud perpetrated by the defendant to unilaterally defraud the United States government of funding

96. The Defendant Isaac Goodwin and his mistress Defendant King and associates perpetrated severe mental anguish upon the deceased.

97. The mistress Defendant King confessed to having had a 3 ½ year relationship with the Isaac Goodwin, using the alias Kristina Robins and the cell phone of Damaris Caraballa alias Defendant Damaris Brown.

98. The Defendants performed no action that demonstrated a duty of care to the deceased.

99. Witnesses state that the Defendant Isaac Goodwin performed no marital duties in respect to the care and concern for his spouse, exhibited no remorse for the death of Katherine Sarah Morris his spouse, and invited persons to the Carowinds Amusement Park in the week following her death.

100.    The Defendant Isaac Goodwin did not disclose the existence of the $100,000 life insurance policy to the deceased Katherine Sarah Morris.

UsAA Confidential

0901119c8d5be4f3

a. Defendant Isaac Goodwin did not willingly inform/enroll the deceased about medical benefits.

b. Defendant Isaac Goodwin did not willingly inform/enroll the deceased about dental benefits.

c. Defendant Isaac Goodwin did not willingly inform/enroll the deceased about commissary benefits.

d. Defendant Isaac Goodwin did not willingly inform/enroll the deceased about housing benefits.

CLOSING

101.     The deceased the late Katherine Sarah Morris' frame of mind can be determined at the time of her interactions by print screens from the deceased phone dating May 2-4, 2012; the deceased twitter page postings dated May 2-5, 2012; and print screens from Facebook postings dated May 2-5, 2012.

102.     The sequence of events is that Defendant King (alias Kristina) and the Defendant's friend Defendant Brown initiated contact on May 2, 2012 at 2:07 p.m. Defendant King sent 6 email messages and spent 3 hours trying to contact the deceased.

103.     Defendant King called the late Katherine Sarah Morris an "Email Gangster" to provoke Katherine Morris into contacting her. "Email Gangster" is a Urban slang term and is a challenge to a physical/in person confrontation to a person that portrays themselves as being tough in emails but they are not so tough in person.

104.     The allegations set forth within the Complaint concerning the Defendant's conduct toward Katherine Sarah Morris constitute deceit and fraudulent representations.

105.     Defendant King used these emails to then bully/manipulate Katherine Sarah Morris into placing a call to her at the 347-931-8643 number at 5:27 pm. Phone records show

-15-

that call lasted 5 minutes. Police records show the Defendants Brown and King had the call on speaker phone.

106.  Plaintiffs have Katherine's electronic communication stating "the way she came at me in those emails".

107.  To further demonstrate the malicious and intentional intent of the Defendants, the electronic communications show Defendant King already knew the answers to the questions she posed to Katherine Sarah Morris on May 2, 2012.

108.  Reviews of statements leave Defendant Brown corroborating Defendant Kings story which conflict with the date stamps on electronics.

109.  Defendant King used a number of aliases in communicating with the deceased and among them are Kristina, Kristinarobins, Damaris Carabello, bluerush007, Feb King.

110.  That call placed by Defendant King and Defendant Brown pushed the already fragile Katherine Sarah Morris into taking her life approx.72 hours later. The impact of this call and emails had on Katherine Sarah Morris is evidenced by electronic postings by her up until her death.

111.  On or about May 7th a phone call was made to the 347-931-8643 by a relative of Katherine Sarah Morris asking to speak to Kristina. They are believed to have spoken to Defendant Brown who responded that Kristina would call them back. The call was returned and it is now known the call was returned by Defendant King using the alias Kristina. From this call it is determined that Kristina (alias Defendant King) was in direct communication with Defendant Isaac Goodwin and they had discussed an insurance policy.

-16-

USAA Confidential

112.    According to Anne Arundel County police reports, Defendant Brown did not disclose information about this May 7, 2012 communication.  She also refused to have her statement recorded by police.

113.    Defendant King obtained an attorney and refused to cooperate.

114.    Records show that the Defendant Brown and Defendant King reported the May 2, 2012 call to their military superiors, after a relative of the late Katherine Sarah Morris reported finding the May 2, 2012 communications in her email and calling the number listed.

115.    The Defendants collectively should have none the foreseeability of their actions.

WHEREFORE: The Plaintiffs of the Estate of Katherine Morris, Marguerite R. Morris and Willie Joe Morris individually, the surviving parent, who provided all of Katherine Sarah Morris, a full-time student completing her final 4th and final year of college, supporting her medically, proving transportation to include automobile and car insurance, phone, life insurance, dental, daily living expenses and necessities, claim monetary damages against the Defendants in an amount of $300,000 or an amount that does not exceed the jurisdiction of the Circuit Court of St Mary's County Maryland, to be determined at trial, plus costs, and for any further relief that this Honorable Court determines necessary and appropriate.

## COUNT I WRONGFUL DEATH

116.    Survival Action of the Estate of Katherine Sarah Morris, which comes by the Estate Personal Representative Marguerite R. Morris.

117.    Plaintiff realleges each and every statement previously set forth and in full herein.

118.    That the death of the late Katherine Sarah Morris on May 6, 2012 was directly and proximate caused by the negligent actions of the Defendants.  Their actions collectively caused

USAA Confidential

0901119c8d5be4f3

severe mental anguish and conscious pain and suffering and the death of Katherine Sarah Morris.

119.    That under Maryland Law "the Last Clear Chance Doctrine" that the Defendants because of their negligent and abusive acts committed against Katherine Sarah Morris caused her death.

**WHEREFORE:** The Plaintiff Estate of Katherine Sarah Morris brings a survival action pursuant to Section 7-401 of the Estates and Trusts Article for her above mentioned injuries and pain and suffering before her death that was proximately caused by the malicious, negligence and un-conscionable claims against Defendants as set forth above.

**WHEREFORE:** The suit is brought and the Plaintiff demands judgment against the Defendants in the amount of $300,000 in compensatory damages, plus interest and cost as this court deems appropriate.

<u>COUNT II WRONGFUL DEATH</u>

COMES NOW the Plaintiff Marguerite R. Morris, individually and as the Surviving Mother of the late KATHERINE SARAH MORRIS, *Pro Se.*

120.    The Plaintiff incorporates herein all preceding paragraphs 1-117 previously set forth as if the same were repeated in full herein.

121.    The Plaintiff enjoyed a close and loving relationship with her only child. The Plaintiff's daughter, the late Katherine Sarah Morris, spent many evenings going to dinner with her Mother, and when home from school often cooked because she had become an excellent cook. They spent each and every birthday coming together and would often go on vacations. The Plaintiff often called and or texted and conversations were usually ended with Katherine saying "luv you to" From the time

USAA Confidential

0901119c8d5be4f3

the Decedent was born on this earth she provided purpose for her mother, blessed her mother with cards, and baking her Mom special birthday cakes, shopping.

122.    The Plaintiff suffered severe shock, grief and emotional pain and suffering. Not a day passes that the Plaintiff doesn't suffer the emotional pain of the absence and love she received from her daughter.

123.    The plaintiff has suffered the loss of the love and society of her daughter through the negligence of the Defendants.

**WHEREFORE;** The Plaintiff Marguerite R. Morris demands judgment against the Defendants in the amount of $300,000 in compensatory damages, plus interest and cost as this court deems appropriate.

*[signature]*

Signature

### III WRONGFUL DEATH

COMES NOW the Plaintiff Willie J. Morris, individually and as the Surviving Father of the late KATHERINE SARAH MORRIS, *Pro Se.*

124.    The Plaintiff incorporates herein all preceding paragraphs 1-122 previously set forth as if the same were repeated in full herein.

125.    The Plaintiff, Willie J. Morris enjoyed the love, closeness and reliance upon the companionship, society and love of his youngest daughter was enjoyed by this Plaintiff as well as her mother. They often had father daughter outings usually on Saturday evenings where he attended church services with her and they would go to dinner. On other occasions even though he and her mother were divorced they often came together as a family to celebrate Katherine's birthday and to just enjoy a meal

-19-

USAA Confidential

and family time together. He and Katherine attended several Father Daughter purity balls and she was truly his daughter sharing a close family bond. They often made an annual father/daughter drive to Georgia for Thanksgiving holidays. In addition, he lived alone and his only visitor was Katherine stopping by to check on him or bring him a meal. She remembered her daddy on every birthday and Father's Day.

126.    The death of Katherine Sarah Morris has caused and continues to cause emotional pain, grief and loss of the advice and love of his late daughter. The Decedent visited and spent time with her Dad and he enjoyed the benefit of her love not only toward himself but also toward her mother and other family members.

127.    The manner and nature of his daughter death has been a source of ongoing emotional trauma as a result acts of the Defendants.

**WHEREFORE:** The Plaintiff Willie J. Morris demands judgment against the Defendants in the amount of $300,000 in compensatory damages, plus interest and cost as this court deems appropriate.

Signature

Dated this 17 day of June, 2013

Marguerite R. Morris *Pro Se*
23665 Halford Lane
Hollywood, Maryland 20636
Hm 301-408-8833
Fax 301-373-2343

Willie J. Morris *Pro Se*
799 White Sands Rd
Lusby, Maryland 20657
Ph. 240-481-4809

USAA Confidential

0901119c8d5be4f3

## DEMAND FOR JURY TRIAL

The Plaintiffs demands a jury trial.

Dated this ___ day of June, 2013

Marguerite R. Morris *Pro Se*
23665 Halford Lane
Hollywood, Maryland 20636
Hm 301-408-8833
Fax 301-373-2343

Willie J. Morris *Pro Se*
799 White Sands Rd
Lusby, Maryland 20657
Ph. 240-481-4809

-21-

USAA Confidential

0901119c8d5be4f3

## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of June 2013, a copy of the foregoing

*Complaint* was mailed by first class mail postage prepaid to:

Isaac Jerome Goodwin
203 Lower Glen Circle
Blythewood, SC 29016

Serve Attorney –James E. Crawford, Jr. Esq.
1435 Sulphur Spring Rd
Arbutus, Maryland 21227

Silver Goodwin
203 Lower Glen Circle
Blythewood, SC 29016

Serve Attorney Michael A. Brown/Jonathan A. Singer
Miles & Stockbridge, P.C.
10 Light Street
Baltimore, MD 21202

Latoya King
c/o CMD, 533D Support BN (BSB CSB) Bldg 200
Ft Totten, New York 11359-1016

Damaris Rosa Brown
8208 Ice House Court Apt B
Ft Belvoir, VA 22060

Marguerite R. Morris *Pro Se*
23665 Halford Lane
Hollywood, Maryland 20636
Hm 301-408-8833
Fax 301-373-2343

Willie J. Morris *Pro Se*
799 White Sands Rd
Lusby, Maryland 20657
Ph. 240-481-4809

-22-

USAA Confidential