IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| THE ESTATE OF KATHERINE SARAH MORRIS | : | |
| | : | |
| v. | : | Civil Action No. DKC 13-3383 |
| | : | |
| ISAAC JEROME GOODWIN, et al. | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution are a motion to quash service of process filed by Defendant Latoya King (ECF No. 15) and a motion to dismiss filed by Defendant Damaris Rosa Brown (ECF No. 30). Also pending is a motion for prejudgment writ of attachment filed by Plaintiff. (ECF No. 4). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion to quash service filed by Defendant King will be granted. Defendant Brown's motion to dismiss will also be granted. Plaintiff's motion for prejudgment writ of attachment will be denied.

**I.   Background**

On July 19, 2013, Plaintiff Marguerite Morris, as personal representative of the Estate of Katherine Sarah Morris, commenced this action in the Circuit Court for St. Mary's County, Maryland, against Defendants Isaac Jerome Goodwin,

Latoya King ("King"), Damaris Rosa Brown ("Brown"), and Silver Goodwin.[1]

The complaint alleges that Marguerite Morris' daughter, Katherine Morris ("Katherine"), was married to Defendant Isaac Goodwin, who was romantically involved with Latoya King during the marriage.  Isaac Goodwin met and began a relationship with Katherine in the early months of 2011, when he was a Staff Sergeant in the United States Army.  Plaintiff avers in the complaint that Defendant Goodwin persuaded Katherine to marry him for his own financial benefit and the two were married on August 3, 2011.  (ECF No. 2 ¶ 30).[2]  Plaintiff asserts that Katherine "discovered that the Defendants Isaac Goodwin [and] Latoya King [] maintained ongoing adulterous relationships over the course of the 9 month marriage." (*Id.* ¶ 42).  According to

---

[1] The complaint also named Willie J. Morris as a plaintiff. In motion papers filed December 3, 2013, Ms. Morris advised that Mr. Morris "is now deceased." (ECF No. 14, at 1). Pursuant to Fed.R.Civ.P. 25(a)(1), if a motion for substitution is not made within ninety days after service of a statement noting the death, "the action by or against the decedent must be dismissed." More than ninety days have passed since Ms. Morris advised of her ex-husband's death and no motion for substitution has been filed. Accordingly, Mr. Morris will be dismissed as a plaintiff in this action. Because Ms. Morris brings this action in her capacity as personal representative of her daughter's estate, and not individually, *see* Md. Code Ann., Est. & Trusts § 7-401(y), there is only one remaining plaintiff in this case.

[2] Plaintiff contends that Isaac Goodwin received certain financial benefits from the Army as a result of the marriage, including an increase in the monthly housing allowance. (ECF No. 2 ¶ 33).

the complaint, Katherine attempted to commit suicide on December 22, 2011. Thereafter, Isaac Goodwin allegedly took out a $100,000 insurance policy with no suicide clause on Katherine's life. (*Id.* ¶ 46).

On March 9, 2012, Katherine saw electronic communications between Isaac Goodwin and Latoya King, and in this communication, King used the alias Kristinarobins@gmail.com. (*Id.* ¶ 67). Defendant Damaris Brown is alleged to be "a friend of Defendant Isaac Goodwin and Defendant King" (ECF No. 2 ¶ 6), and also to have "befriended [Katherine Morris] on Facebook . . . in March 2012" (*id.* ¶ 77). According to Plaintiff, on or about May 2, 2012, King, "using the alias Kristinarobbin [,] . . . and Brown initiated an email to [Katherine]" using Brown's email address of bluerush007@gmail.com. (*Id.* at ¶¶ 71-73). On the same date, King sent another email through Brown's email account in which she allegedly told Katherine, "Yes, we [Latoya King and Mr. Goodwin] have been intimate regularly for the past 3½ years and we still communicate and we are trying to work things out as well and I'm definitely not his ex." (*Id.* ¶ 74). In the opposition to Brown's motion to dismiss, Plaintiff indicates that Brown and King exchanged eleven more emails about Katherine's relationship with Isaac Goodwin. (ECF No. 32-2, at 8). Apparently, during this email exchange, King persuaded Katherine to call her on May 2, 2012, and Brown was present with

3

King during this conversation.   (ECF No. 2 ¶ 105).   Plaintiff
asserts that "[e]lectronic records show there were also 3 phone
calls placed to Katherine Sarah Morris" using Brown's cell
phone.   (*Id.* ¶ 71).   Plaintiff alleges that this email exchange
and phone call "placed by Defendant King and Defendant Brown
pushed the already fragile Katherine . . . into taking her life
[approximately] 72 hours later."   (*Id.* ¶ 110).   On May 5, 2012,
Katherine Morris committed suicide by carbon monoxide poisoning.
(*Id.* ¶ 10).

King removed the action to this court on November 13, 2013,
citing diversity of citizenship as the jurisdictional basis.[3]
Along with the notice of removal, she filed a copy of the

---

[3] In response to the notice of removal, the court directed
King to file all state court documents in this case pursuant to
Local Rule 103.5.a.  (ECF No. 23).  Someone asked the Circuit
Court for St. Mary's County to transmit all papers in the case
to the clerk's office in Greenbelt, and, in response, the
Circuit Court for St. Mary's County transmitted its original
file rather than copies.   The clerk's office returned the
original file to the Circuit Court for St. Mary's County,
advising it to send copies.  The state court docket reflects
that the original file was received, but apparently, the Circuit
Court cannot now locate it.

The docket reflects, however, that on May 20, 2014, the
court received paper copies of state court documents from
counsel for Latoya King and counsel was advised on May 23, 2014
that all documents should have been filed electronically.  (ECF
No. 35).  According to the docket entry, counsel indicated that
the documents would be electronically filed, but the remainder
state court documents have yet to appear on the docket.  Counsel
for King will have seven (7) days to file the state court
documents on CM/ECF.

complaint, a summons, a notice of filing of the petition of removal, and an unresolved motion for prejudgment writ of attachment filed by Plaintiff in the state court action.[4]

On December 6, 2013, King filed the pending motion to quash service of process.   (ECF No. 15).   Plaintiff opposed that motion on December 18 (ECF No. 21), and King filed reply papers on January 7, 2014 (ECF No. 27).

On March 13, 2014, Brown filed a line, requesting that an attached motion to dismiss for lack of personal jurisdiction or for failure to state a claim – which was filed in state court, but unresolved prior to removal – be docketed.   (ECF No. 30).[5] On March 27, Plaintiff filed a motion for leave to file an attached supplemental memorandum to the opposition papers she

---

[4] Plaintiff filed the motion for prejudgment writ of attachment (ECF No. 4) pursuant to Md. Rule 2-115(a), which provides that "a plaintiff entitled by statute to attachment before judgment may file a request for an order directing the issuance of a writ of attachment for levy or garnishment of property or credits of the defendant," accompanied by "an affidavit verifying the facts set forth in the complaint and stating the grounds for entitlement to the writ."   Plaintiff's motion does not demonstrate that she is entitled by statute to a writ of attachment, nor does it include the required affidavit. Accordingly, the motion for prejudgment writ of attachment will be denied.

[5] On the same date, Brown separately filed a line, attaching a motion to stay execution of a subpoena for her telephone records pending resolution of her motion to dismiss.   (ECF No. 31).   Because the motion to dismiss will be granted, the motion to stay will be denied as moot.

filed in response to Brown's motion to dismiss in state court. (ECF No. 32).[6]  Brown opposed this motion.

## II. Defendant King's Motion to Quash Service

In moving to quash service of process, King asserts that Plaintiff attempted to serve her "by mailing, via standard mail, the summons and Complaint to [her] at the Fort Totten military base in New York, where [she] is currently stationed." (ECF No. 15, at 1).  She argues that this was insufficient to effect service of process under Md. Rule 2-121(a)(3), which requires service of process "by certified mail requesting: 'Restricted Delivery – show to whom, date, address of delivery.'"

When a defendant challenges service of process, "the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *O'Meara v. Waters*, 464 F.Supp.2d 474, 476 (D.Md. 2006); *see also* Fed.R.Civ.P. 4(l)(1). "Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the court." *Id.* (citing *Karlsson v. Rabinowitz*, 318 F.2d 666,

---

[6] Plaintiff was *pro se* at the time she opposed Brown's motion to dismiss when it was filed in the Circuit Court for St. Mary's County, Maryland.  Plaintiff has since retained counsel, who argues that the court should accept the supplemental memorandum in support of her opposition to "clarify the legal argument" and provide authority upon which jurisdiction is based. (ECF No. 32, at 2).  Although Brown, who is represented, objects to this supplemental memorandum, it will be accepted.

668 (4th Cir. 1963); *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)). The "plain requirements for the means of effecting service of process," however, "may not be ignored." *Armco*, 733 F.2d at 1089.

State law governs the question of whether service of process was properly effected prior to removal, but federal law applies after removal. Here, as noted by Defendant, Md. Rule 2-121(a)(3) provides that service by mail may be effected only by certified mail with restricted delivery. In responding to the motion, Plaintiff attaches to her opposition documentation showing that restricted delivery was not requested (ECF No. 22-1, at 3) and a declaration of the process server asserting that the complaint "was mailed first class postage prepaid" to King (*id.* at 5). Because this attempted service was insufficient under the applicable Maryland rule, the motion to quash will be granted. Plaintiff will be directed to submit a renewed summons to the clerk of this court and to effectuate service of process upon King promptly after it is issued.

### III. Motion to Dismiss

Defendant Brown moves to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim. (ECF No. 30).

Insofar as Defendant Brown contends that the court lacks personal jurisdiction, her motion is governed by Federal Rule of

Civil Procedure 12(b)(2).   Where the defendant is a nonresident, a federal district court may exercise personal jurisdiction only if "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993).   The Maryland Long-Arm Statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002) (*citing Androutsos v. Fairfax Hosp.*, 323 Md. 634, 637 (1991)).   This broad reach does not suggest that analysis under the long-arm statute is irrelevant; rather, it reflects that, "to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause." *Dring v. Sullivan*, 423 F.Supp.2d 540, 545 (D.Md. 2006) (*quoting Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F.Supp. 116, 118-19 n.2 (D.Md. 1995)); *see also Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141 n.6 (2006) (although the "long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause," it is not "permissible to dispense with analysis under the long-arm statute").   To satisfy the long-arm prong of the analysis, a

8

plaintiff must specifically identify a statutory provision that authorizes jurisdiction, either in the complaint or in opposition to a Rule 12(b)(2) motion. *See Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F.Supp.2d 649, 652 (D.Md. 2001); *Johansson*, 304 F.Supp.2d at 704 n.1.

The Maryland Long-Arm Statute provides, in relevant part:

> (a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
>
> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> > (1) Transacts any business or performs any character of work or service in the State;
> >
> > (2) Contracts to supply goods, food, services, or manufactured products in the State;
> >
> > (3) Causes tortious injury in the State by an act or omission in the State;
> >
> > (4) Causes tortious injury in the State or outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

Md. Code Ann., Cts. & Jud. Proc. § 6-103.

Plaintiff does not identify the jurisdictional basis in her complaint, but asserts in the opposition to Brown's motion to

dismiss that jurisdiction is proper under either subsection (b)(1) or (b)(3).  (ECF No. 32-1, at 3).[7]  Section 6-103(b)(1) is inapplicable because Plaintiff makes no allegations that Brown transacted any business or performed any character of work in Maryland.   Section 6-103(b)(3) is equally unhelpful to Plaintiff.  According to Plaintiff, Brown's activity included: (1) sending a "friend request" to Katherine on Facebook; (2) initiating, along with King, an email to Katherine; (3) participating in multiple email exchanges with Katherine on May 2, 2012 by allowing her alias and email address to be used; and (4) allowing her phone to be used to place three calls to Katherine and prompting Katherine to call Brown's phone.  (ECF No. 2, at 11-12).  Brown performed all these acts in Virginia, however, not Maryland.  Plaintiff does not cite Section 6-103 (b)(4) as a jurisdictional hook, but in any event, Plaintiff has not established that Brown engaged in a "persistent course of conduct" in Maryland.  Although Plaintiff concedes that King wrote the email messages to Katherine, the allegations in the

---

[7] Plaintiff's attorney skips the long-arm statute analysis in the supplemental memorandum in support of the opposition, arguing that "the Maryland Court of Appeals has held that the long-arm statute extends personal jurisdiction to the fullest extent permitted by the Due Process Clause."  (ECF No. 32-2, at 9).  Plaintiff must first identify the particular provision of the long-arm statute on which she relies, however.  Only then can she advance to the next step of the analysis regarding whether the exercise of jurisdiction over Defendant Brown would violate the Due Process Clause of the Fourteenth Amendment.  As will be seen, Plaintiff fails to meet this threshold.

complaint aver that Brown was present during all the communications on May 2, 2012, that Brown's alias and email address were used to initiate and direct the email exchange with Katherine, and that Brown's phone was used to call Katherine (and that Katherine was on speaker phone during the calls). These acts do not rise to the level of "persistent course of conduct" under Section 6-103(b)(4).

Based on the foregoing, Plaintiff cannot establish that personal jurisdiction exists over Brown. Even assuming personal jurisdiction exists over Brown, however, the alleged facts, while tragic, are insufficient to state a claim for wrongful death against Brown. Judge Blake observed in *Grinage v. Mylan Pharmaceuticals, Inc.*, 840 F.Supp.2d 862, 872-73 (D.Md. 2011):

> In Maryland, a wrongful death action "may be maintained against a person whose wrongful act causes the death of another." Md. Code Ann., Cts. & Jud. Proc. § 3-902(a). Thus, a party can only bring a wrongful death action if a "wrongful act" occurred. *Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 79 n. 6 (2006). A wrongful act is "an act, neglect, or default including a felonious act which would have entitled the party injured to maintain an action and recover damages if death had not ensued." Md. Code Ann., Cts. & Jud. Proc. § 3-901(e).

Here, it is unclear what the "wrongful act" perpetrated by Brown may have been. The complaint contains a number of allegations charging Brown with providing misinformation to authorities investigating Katherine's death, but such conduct necessarily

could not have contributed to a death that had already occurred. At best, the complaint alleges that Brown facilitated King's contact with Katherine by permitting King to use her email account and/or phone.   In her supplemental motion papers, Plaintiff alleges that "Brown's cyber bullying led to Katherine's suicide, giving rise to a cognizable wrongful death claim[.]" (ECF No. 32-2, at 5).  But Plaintiff's own complaint states that Defendant *King* used emails – in which she called Katherine an "email gangster" and confirmed that she was having relations with Isaac Goodwin – to "bully/manipulate Katherine." (ECF No. 2 ¶ 105).  Plaintiff further avers that "Defendant *King* sent 6 email messages and spent 3 hours trying to contact the deceased."  (*Id.* ¶ 102) (emphasis added).  Thus, the well-pleaded allegations of the complaint do not support a wrongful death claim against *Brown*.  Accordingly, the motion to dismiss will be granted.[8]

---

[8] Brown further seeks an award of attorney's fees pursuant to Md. Rule 1-341, which provides that, "if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification, the court, on motion by an adverse party, may require the offending party . . . to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorneys' fees, incurred by the adverse party in opposing it."  The court does not find that Plaintiff, who was proceeding *pro se* at the time the complaint was filed, brought this action in bad faith or without substantial justification.  Accordingly, Brown's request for attorney's fees will be denied.

What remains, then, is one plaintiff – the Estate of Katherine Sarah Morris, by Marguerite Morris in her capacity as personal representative – and three defendants, at least one of whom – King – has not been properly served.  Defendant Silver Goodwin, proceeding *pro se*, filed an answer to the complaint on December 23, 2013.  (ECF No. 24).  The state court docket reflects that the court permitted alternative service upon Defendant Isaac Goodwin, but the record in this case does not reflect that this defendant has yet been served.  Plaintiff will be directed to file proof of service as to Isaac Goodwin within fourteen (14) days.

## IV. Conclusion

For the foregoing reasons, the motion to quash service filed by Defendant King and the motion to dismiss filed by Defendant Brown will be granted.  Plaintiff's motion for prejudgment writ of attachment will be denied.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge