IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

THE ESTATE OF
KATHERINE S. MORRIS, et al.
By Court Appointed Administrator
Marguerite R. Morris

and Marguerite R. Morris

Plaintiffs,

vs.  Civil Action No. 8-13-cv-03383-DKC

Isaac Jerome Goodwin, et al

Defendants

## MEMORANDUM AND STATEMENT OF GROUNDS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION NOT TO DISMISS

Recited in part from the Opinion of Judge Ronald B. Rubin, Judge April 28, 2009 Blue Bird, LLC., t/a MissNowMrs.com, Plaintiff, Amber Nolan, et al. Defendants.

## MEMORANDUM OPINION

Now comes the Plaintiff, Marguerite R. Morris and in support of her Motion Not To Dismiss this action because personal jurisdiction has been established and this action does state a claim as follows:

I. **Background**

1. On August 3, 2011 the deceased Katherine Sarah Morris a 4th year University of Maryland student married Sgt. Isaac Jerome Goodwin of the United States Army in a justice of the peace ceremony in Arlington, Virginia. The marriage spanned 9 months in

9

which the Defendant Goodwin maintained and ongoing sexual relationship with the defendant Sgt. Latoya King.

2. Goodwin and Morris never lived at the same address and there was no exchange of rings. Hours after the marriage ceremony Goodwin took the license and returned to his Ft Bragg, NC, filed for and collected benefits on Katherine's behalf and pocketed the money.

3. In Dec. 2011 Katherine experiencing a crisis informed her parents about the marriage.

4. In January 2012 Katherine and Goodwin's command became aware of this marriage and Goodwin's alleged fraud.

5. Katherine by way of the marriage came under a $100,000 life insurance policy upon which Goodwin was the sole beneficiary with no suicide clause.

6. Katherine saw electronic communications that confirmed Goodwin's extramarital affairs in March of 2012.

7. The Plaintiff alleges that on March 27, 2012 the Defendant King using the alias Damaris Brown contacted the now deceased Katherine Morris, a resident of College Park, Maryland via her Facebook account. Katherine Morris accepted the Facebook invitation and sent the Defendant whom appeared to be Damaris Brown two inquiries asking who she was or did she know her. Exhibit 8.

8. The acceptance of the invitation then allegedly made the Defendant King privy to information about the deceased. Via this communication Defendant King gained access to personal information only available to friends of the deceased, her Facebook postings, photos, conversation with others and any other programs the deceased participated in.

9. Defendant King used several alias' to communicate with the deceased i.e Kristina, Kristinarobins, FebKing, bluerush007, Damaris Carabella, and Damaris Brown.

10. On May 2, 2012 these communications that were initiated by King lasted over 3 hours and violated Facebook's rules of use.

11. These communications crossed state lines.

12. On May 4, 2012 Katherine emailed Goodwin, King and Brown informing them that she will be going to the Inspector General's Office the following week if she did not hear from Goodwin. She also emailed them electronic copies of numerous emails, and Facebook messages documenting the fraud and adultery.

13. On May 4, 2012 Katherine Morris sent Defendant Goodwin several text messages informing him that she would go to the Inspector General's office with recordings of the 2 phone calls King made to her and other electronic proof of the adulterous relationship and the BAH fraud that had been perpetrated on her. Exhibits 49, 50 and 51.

14. On May 5, 2012 Katherine received an invitation to attend a movie at the Arundel Mills Mall where her lifeless body was found on May 6, 2012 in her car. Cause of death was carbon monoxide poisoning by way of a charcoal grill.

15. The Defendant King has motioned the court for dismissal citing lack of Jurisdiction and failure to state a claim.

**DISCUSSION**

16. "The Court of Appeals has held that "conducting business in Maryland that involves supplying computer programs or information to Maryland residents will be treated in the same manner as if the programs and information were tangible goods or services provided by a business." *Beyond Systems*, 388 Md. At 25-26. In this case, the court must

11

decide whether it can exercise personal jurisdiction over defendants whose only contact with the forum state occurred over the internet."

**A. Governing Legal Standards**

    a. "Maryland courts will not allow Defendants to hide behind their computer screens when they knowingly transact business with a Maryland company or cause tortuous injury in the state of Maryland, as did the Defendant in this case. "Whether the entry to the State was real or virtual should not matter; traditional notions of justice apply to both traditional and novel avenues of attack." *Cole-Tuve*, 342 F. Supp. 2d at 369."

17. "With regard to the two-part test, Maryland courts "have consistently held that the purview of the long arm statute is coextensive with the limits of personals jurisdiction set by the *due process clause of the Federal Constitution*," thus "our statutory merges with our constitutional examination." *Beyond Sys.*, 338 Md. At 15, 22. Once challenged, the plaintiff bears the burden of demonstrating the existence of sufficient facts so that the court may lawfully exercise personal jurisdiction. *Craig v. General Finance Corp. of Illinois*, 504 F. Supp. 1033, 1034 (D. Md. 1980)."

    a. The defendant states that "... The court must find that Ms. King engaged in a persistent course of contact in Maryland in order to exercise personal jurisdiction. The Plaintiff contends that a soldier spending 3 hours during the course of a military work day sending emails and or making phone calls to a college student who is at work on her college work study job, for the purpose of harassing her should constitute a

persistent course of contact." The facts of this case do support such a finding.

    b. "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need make only a prima facie case that personal jurisdiction exists."

18. The Maryland Long-Arm Statute provides, in relevant part:

A court may exercise personal jurisdiction over a person, who directly or by agent:

    i. (4) Causes tortious injury in the State or outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or con summed in the St ate .

Md. Code Ann ., Ct s & Jud. Proc. § 6 -103 b) (4)

19. The defendant states that "A similar analysis applies to the case herein." King, a United States soldier on duty at a military installation clearly and purposefully availed herself by spending 3 hours during a military work day sending emails and trying to get ahold of a young college student. This was not random calling. This calling was malicious and targeted for a specific person inside of the state of Maryland. " King has clearly and repeatedly participated in a "persistent course of conduct". These eleven or more exchanges could have been one per day over the course of eleven days. Should the impact be any different? The intent was the same.

20. In order to pass constitutional muster under the Due Process Clause, the defendant must have "minimum contacts" with Maryland such that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v Washington*, 326 U.S. 310, 316 (1945) (citation omitted). The court must consider not only the "nature" of the defendants' contacts with Maryland, *Helicopteros Nacionales de*

13

*Columbia, S.A. v. Hall*, 466 U.S. 408, 416-17 (1984), but also "the relationship among the defendant, the forum, and the litigation," *Shafer v Heitner*, 433 U.S. 186, 204 (1977), to determine whether the defendants "should reasonably anticipate being hauled into court" in the State of Maryland. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)."

When the Defendant created the fictitious "Kristina, bluerush007@gmail.com, and Damaris Carabella, KristinaRobins, and Feb King accounts, she did so for her own benefit – to conduct tortuous acts specifically against the deceased.

**II The Plaintiffs Have Set Out Facts to Establish Personal Jurisdiction**.

21. In this case, the facts show that the Defendants, in their personal capacity and as a group, intended to harm the deceased using the Facebook website and Google to in-appropriately contact the deceased in a manner that was unlawful through the United States military (a branch of the federal government)for the purposes of adultery, harassment and internet abuse. The court should find that the conduct undertaken either directly by the individual defendants or through an agent was intentionally targeted and focused on the deceased, a Maryland resident with a principal residence in Maryland.

22. The Defendant states that "At no time during the time period surrounding the allegations in the Complaint did Ms. King enter into the State of Maryland or in any way conduct business in Maryland." The Plaintiff states that the distance between where the deceased body was found and where the Defendant King lived was approximately forty seven miles. To travel from Ft Belvoir to most points south, including Ft Bragg, North Carolina it is conceivable that King would have traveled through Maryland. The Defendant does not present an affidavit attesting to her statement.

23. Coincidentally King was also only sixteen miles outside of DC where Katherine Morris car was broken into in February of 2012. A rock was thrown through the window, the car was searched, nothing was taken, even though electronics were clearly visible.

**Plaintiff Presents Additional Factual Support To the Claims Set Forth**

24. The defendant states that " …It should be noted that the Plaintiffs allege without factual support the use of these aliases by the Defendants King and that the calls referenced originated from the phone of the dismissed defendant, Brown. The Defendant is also alleged to have initiated a Facebook friend request. Ms. King specifically denies these allegations."

25. The defendant King again shows a blatant disrespect for the truth and the honorable court. Upon the death of the deceased the United States Army completed a Report of Proceedings By Investigating Officer/Board of Officers referred to as 15-6 report. The report itself references Kristina as Sgt. King.

26. The plaintiff was informed personally by the Chief Investigator, Lt Col Troy Glazier the true identity of Kristina. Affidavit enclosed.

27. The Plaintiff will be submitting to the court an affidavit from Charlotte Morris, the half-sister of the deceased who on the morning her body was found accessed Katherine's email accounts and discovered the communications. She then called the number 347-931-8643 now identified by the Anne Arundel County Police Department, as that of Damaris Brown. She placed two calls to the phone number appearing in Katherine's email on the morning of May 6, 2012. Charlotte Morris asked to speak with Kristina and a woman identifying herself as Brown summoned a person who identified herself as Kristina, who we now know was

15

Sgt. Latoya King. The Plaintiff will by a witness' testimony show that there were 2 phone conversations with this person who knew the exact whereabouts of the Defendant Goodwin and was scheduled to pick him up from the airport.

28. It was Kristina alias King who first made inference to insurance money to a family member who stated that she had no idea what she was referring to. This was the one and only time any discussion has been had with the Morris family as they were never formally informed about insurance and traveled to 3 military bases trying to get assistance to bury their only child. They had to turn to friends and family since their insurance policy was rejected because of a suicide clause. Goodwin by order of his commander contributed aprox. $980.

29. On May 6, 2012 a witness contacted the Millersville police department to report seeing a car sitting in the parking lot a few feet from where Katherine's body was. At depositions the women testified the vehicle was an SUV with a woman sitting in it for several hours. A second witness testimony confirms that a white SUV is owned or was parked at the home of previous defendant. The Plaintiff was recently able to slow down available surveillance footage from the parking lot in which the deceased body was found. In the footage a white SUV is pulling away from the area of the vehicle, the last time there was movement reported at the deceased vehicle. Exhibit __52__

**III. Standard To Not Dismiss**

The Defendant states that "A pleading must allege facts, if proven true, sufficient to support each and every element of the asserted claim. Horridge v. St. Mary's County Dep't of Soc. Servs., 382 d. 170 (2004). In order to state a claim for negligence, a complaint must allege,

with certainty and definiteness, facts and circumstances sufficient to set forth (a) a duty owed by the defendant to the plaintiff, (b) a breach of that duty and (c) injury proximately resulting from that breach."

The Plaintiff contends that as a United States soldier whose employment prohibited the Defendant King from being in an adulterous relationship (sexual misconduct) with the husband of the deceased as well as sending the communications supports the claim of negligent and malicious behavior. "..Department Counsel contended Applicants sexual misconduct was criminal in nature because it violated Article $133^6$ and Article $134^7$ of the Uniform Code of Military Justice[1]." DISCR OSD Case No. 91-0762 (1993) "..found Applicant's sexual misconduct constituted criminal conduct under Criterion H because it was violative of the Uniform Code of Military Justice. On appeal, Applicant contends this is error because (a) Applicant was not placed on sufficient notice that he would have to defend *against* the allegation that his sexual misconduct violated the Uniform Code of Military Justice; (b) there is no evidence Applicant's conduct violated the Uniform Code of Military Justice; and (c) Applicant was never apprehended, arrested or charged under any law, regulation, or statute on account of his sexual misconduct. We find none of these arguments to be persuasive" DISCR OSD Case No. 91-0762 (1993).

"..Applicant correctly points out he was never apprehended, arrested, or formally charged with violating any law, statute or regulation, including the Uniform Code of Military Justice However, that fact does not preclude the Judge from finding Applicant engaged in criminal conduct. See, e.g., DISCR OSD Case No. 91-0148 (April 24 at 4 ("Under the provisions of the Directive, however, conviction is not a prerequisite to a finding of criminal conduct. Proof of

the underlying conduct may be made independently, even absent a conviction on criminal charges.") , DISCR OSD Case No. 91-0762 (1993).

The Plaintiff states that King uses the alias Kristina to communicate with the Defendant Goodwin. In the Motion to dismiss King alleges that she did not know that Goodwin was married. The Plaintiff states that Goodwin obviously knew who Kristina was, and alleges that the alias' she used in communicating with him was to hide their affair and identity from the deceased as well as to cover any trail that might lead back to them. If not then the Plaintiff must ask the question, in communication with Goodwin who was King hiding her identity from or why did she need to use an alias when communicating with a lover she had been with for 3 years.

In addition, the Plaintiff also alleges that the email sent expressing surprise as to the marriage, etc. were a shams as Latoya King has repeated demonstrated a lack of honesty and disrespect for the court in these preliminary proceedings.

The defendant King writes " .. This appears to be the extent of the factual allegations of wrongdoing in the Complaint. Plaintiffs fail to allege a duty owed by the Defendant King to the decedent, fail to set forth acts of negligence and fail to set forth a causal connection between the alleged negligence and the injuries sustained and that such negligence was the proximate cause of the injury sustained. Plaintiff plans to request leave to amend the complaint based on new information to support the claim for wrongful death.

**IV  Jurisdiction Pursuant to Maryland's Long Arm Statute**

As an additional means of exercising personal jurisdiction over the Defendant, Plaintiff contends that because the King's contacts with the deceased in Maryland form the basis for the

suit, Plaintiff has elected to pursue jurisdiction on the grounds of specific jurisdiction.[2] The Court of Appeals, adopting the Fourth Circuit's three-part test for determining whether specific jurisdiction exists, held that:

> In determining whether specific jurisdiction exists, we consider (1) the extent to which the Defendant has purposefully availed itself of the privilege of conducting activities in the State; (2) whether the Plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.

*Beyond Sys.*, 388 Md. At 26 (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003)).

The purposeful availment hurdle also is overcome when the Defendant's contacts with the forum state are such the "he should reasonably anticipate being haled into court there." *Taylor v. CSR, LTD.* 181 Md. App. At 378 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)."

"The Court of Special Appeals has held that "where the case involves torts that create causes of action in a forum state…the threshold for purposeful availment is lower. The Defendant allegedly causing harm in the state may understandably have sought no privileges there; instead the Defendant's purpose may be said to be the targeting of the forum state and its residents." *Marycle, LLC et al. v. First Choice Internet, Inc.*, 166 Md. App. 481, 509 (2006) (*citing Digital Equip. Corp. v. AltaVista Tech., Inc.*, 960 F. Supp. 456, 469 (D. Mass. 1997)."
The court may use a "five factor test to determine whether a defendant's contacts meet the due process minimum: "1) the nature and quality of the defendant's contacts with the forum state; 2) the quantity of such contacts; 3) the relation of the cause of action to the contacts; 4) the interests of the forum state in providing a forum for its residents; and 5) the convenience of the parties."

---

[2] Many of defendant's arguments as to why personal jurisdiction is not proper rely on the premise that jurisdiction would be exercised solely on the basis of defendants' own internet business transactions with Maryland residents.

*Steinbuch,* 518 F.3d at 586. The third factor applies only on the question of whether specific jurisdiction exists, *id.,* and the last two factors "carry less weight and are not dispositive." *Johnson v. Woodcock,* 444 F.3d 953, 956 (8th Cir.2006).

"The court must next determine whether the cause of action arises from Defendants' activities in Maryland. "If a Defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Marycle,* 166 Md. App. At 504 (2006) (quoting *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1267 (6th Cir. 2006) ); *see also Creech v. Roberts,* 908 F. 2d 75, 80 (6th Cir. 1990) ("An action will be deemed *not* to have arisen from the Defendant's contacts with the forum state only when they are unrelated to the operative facts of the controversy.")/"

"As to the third prong, once purposeful availment has been established, a Defendant must make a "compelling case" that it is unreasonable or unfair to require it to defend a suit out of state. *Marycle,* 116 Md. At 510 (citation omitted). When a Maryland resident is harmed, it is only natural for the Maryland resident to bring suit in a Maryland court. "Convenience might be a byproduct of the venue of this action, but it is no way the sole basis for exercising personal jurisdiction over the Defendants."

**V. This Lawsuit is Appropriate and the Plaintiff Does State a Claim.**

The Last Clear Chance Theory comes out or the "Donkey Case" of Davies v. Mann. In this case the court concluded that "though the act of the Plaintiff might be illegal" still if the accident was caused by Defendant's improper conduct, and the Defendant could with proper care avoid the incident, Plaintiff may recover. In present day status one of the principle ways of classifying cases in courts which apply this doctrine is if "Plaintiff is helpless and Defendants had a conscious last clear chance to avoid injury to Plaintiff. Plaintiff can recover."

In Cavanaugh v. Boston & M.R. Co., the court said; "It may be ...that the real foundation for the rule is merely its fundamental justice and reasonableness. The justice of the rule that the contributory negligence of the party injured will not defeat the action, if it can be shown that the Defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence, may be a sufficient foundation for it.[3]

"The third reason for the doctrine of last clear chance centers around social well-being and "public policy." The doctrine is founded upon reasons humane which forbid a wrongdoer from taking advantage of the perilous position of his fellow man to inflict injury and escape responsibility. It is felt by some that to permit the Defendant to escape liability under such circumstances disrupts the social order of a community and contravenes public policy."[4]

The last clear chance doctrine was examined again in Kumkumian v. City of New York, (1953) when a man was killed on the New York subway railroad tracks. Kumkumian walked into a restricted access tunnel and was lying on the railroad tracks when a train hit him.... Despite Kumkumian's contributory negligence in walking down the tunnel and lying on the train tracks, the doctrine of last clear chance applies... The court reasoned that the Defendant does not need to have precise knowledge of an impending danger. If there is proof to support an inference that someone is in peril then the Defendant should act upon that inference. The Defendant, should have understood the possible implications of their actions. King was 9 years senior to the deceased and none of them exercised the precautions of a reasonable man. This indifference to life constituted negligence that negated the effect of the deceased Katherine Morris possible act of contributory negligence.

---

[3] James, Last Clear Chance, 47 Yale L.J. 707 (1938)
[4] See Note, 92 A.L.R. 47, 53, 140 (1934); 119 A.L.R.369, 370 (1947)

**Plaintiff Sets Forth a Connection Between the Events and the Injury**

Plaintiff states that at the time of discovery additional materials will be produced to show a clear connection between these events and the injury.

**WHEREFORE,** for all of the foregoing reasons, the Plaintiff Marguerite Morris respectfully request that this honorable Court not issue an Order dismissing the claims brought against the Defendant Latoya King in this matter.

11-5-2014
Date

Marguerite Morris, Pro Se
45985 North Greens Rest Dr.
Great Mills, MD 20634
301-408-8833

## CERTIFICATE OF SERVICE

I hereby certify that on this ___6___ day of November, 2014, a copy of the foregoing MEMORANDUM AND STATEMENT OF GROUNDS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION NOT TO DISMISS was mailed first class postage prepaid to the following addresses to include persons last known address :

Isaac Jerome Goodwin
1920 Rayconda Place, Apt 108
Fayetteville, North Carolina 28304

Latoya King
c/o James E Neary, Esquire
401 North Charles Street
Baltimore, Maryland 21201

Silver Goodwin
203 Lower Glen Circle
Blythewood, SC 29016

*Juanita Myrick*
Juanita Myrick
45985 North Greens Rest Drive
Great Mills, Maryland 20634
Hm 301-994-1862

23