IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| THE ESTATE OF KATHERINE SARAH MORRIS, et al. | : | |
| | : | |
| v. | : | Civil Action No. DKC 13-3383 |
| | : | |
| ISAAC JEROME GOODWIN, et al. | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this wrongful death case are three motions:  (1) a motion for leave to amend the complaint filed by Plaintiff Marguerite Morris, on her own behalf (ECF No. 60); (2) a renewed motion for an entry of default against Defendant Isaac Goodwin filed by Plaintiff Marguerite Morris, on her own behalf and on behalf of the Estate of Katherine Morris (collectively, "Plaintiffs") (ECF No. 83); and (3) motion to dismiss filed by Defendant Latoya King (ECF No.85).  The court now rules, no hearing being deemed necessary. Local Rule 105.6.  For the reasons that follow, the motions to amend and for entry of default judgment will be denied.  The motion to dismiss filed by Defendant King will be granted.

## I.  Background

The allegations contained in the complaint are set forth in a prior memorandum opinion, but a brief overview of the thorny procedural history of the case is helpful here.  *See Estate of*

*Morris v. Goodwin*, Civ. Action No. DKC 12-3383, 2014 WL 372389 (D.Md. July 24, 2014).   On or about June 17, 2013, Plaintiff Marguerite Morris, both in her individual capacity and as personal representative of the Estate of Katherine Sarah Morris, commenced this wrongful death action in the Circuit Court for St. Mary's County, Maryland against Defendants Isaac Jerome Goodwin, Latoya King, Damaris Rosa Brown, and Silver Goodwin.[1] (ECF No. 42).   On November 13, 2013, Defendant King removed the action to this court, citing diversity of citizenship as the jurisdictional basis.   (ECF No. 1).   In response to the notice of removal, the court directed King to file all state court documents in this case pursuant to Local Rule 103.5.a.   (ECF No. 23).   After a request to transmit all papers in the case from the Circuit Court for St. Mary's County to the clerk's office in Greenbelt, the circuit court transmitted its original file rather than the copies.   (ECF No. 36, at 4).   The clerk's office in Greenbelt returned the original file to the circuit court, advising it to send copies.   (*Id.*).

---

[1] The original complaint named as Plaintiffs the Estate of Katherine Morris with Marguerite Morris as administrator of the Estate, Marguerite Morris in her individual capacity, and Willie J. Morris.   (ECF No. 42).   Willie Morris was dismissed as a plaintiff in the July 24, 2014 memorandum opinion, thereby leaving as Plaintiffs Marguerite Morris in her individual capacity and as administrator of the Estate.   (ECF No. 36, at 13).   In the same opinion, the claims against Defendant Brown were dismissed.   (*Id.* at 12).

On March 13, 2014, Brown filed a line, requesting that an attached motion to dismiss for lack of personal jurisdiction or for failure to state a claim – which was filed in state court, but unresolved prior to removal – be docketed. (ECF No. 30). On July 24, 2014, the undersigned issued a memorandum opinion and order dismissing the case against Defendant Brown. (ECF Nos. 36 & 37). The order also gave counsel for Defendant Latoya King seven (7) days to file the state court documents on CM/ECF. (ECF No. 37). The July 24, 2014 order further directed Plaintiffs to file proof of service as to Defendant Goodwin within fourteen (14) days, as the record in this court did not reflect that Defendant Goodwin had yet been served. (ECF No. 36, at 13). On August 4, 2014, Plaintiffs filed purported proof of service as attachments in a renewed motion for an entry of default against Defendant Isaac Goodwin. (ECF No. 83). The docket reflects that two motions for entry of default were previously filed as to Defendant Goodwin in the Circuit Court for St. Mary's County. (ECF Nos. 52 & 68). The circuit court denied the first motion on October 7, 2013, (ECF No. 63), but does not appear to have ruled on the second motion at the time of removal.

On August 1, 2014, the original docket from the Circuit Court for St. Mary's County was filed in this court. (ECF Nos. 42-82). The docket reflects that on September 26, 2013, prior

to removal, Plaintiff Marguerite Morris, on her own behalf, moved for leave to file an amended complaint in the circuit court. (ECF No. 60, at 1). That motion was not adjudicated prior to removal. (*See* ECF No. 82, docket from circuit court).

On September 5, 2014, Defendant Latoya King moved to dismiss the complaint. (ECF No. 85). Soon thereafter, Plaintiffs' attorney moved to withdraw as counsel on behalf of both Marguerite Morris and the estate. (ECF No. 86). The court issued a letter order granting the motion to withdraw as to Marguerite Morris in her individual capacity, noting that the motion to withdraw appearance as to the estate would not be resolved for thirty (30) days pursuant to Local Rule 101.2. (ECF No. 89). On October 29, 2014, the court issued an order striking the appearance of counsel on behalf of the estate and giving the estate forty-five (45) days to obtain new counsel. (ECF No. 93). On November 6, 2014, Plaintiff Marguerite Morris filed a *pro se* opposition to Defendant King's motion to dismiss. (ECF No. 94). New counsel for the estate entered his appearance on December 6, 2014. (ECF No. 97).

## II.  Analysis

### A.  Motion for Leave to File Amended Complaint

Federal Rule of Civil Procedure 15(a)(1) permits a party to amend its pleading once as a matter of course within 21 days after serving it; or 21 days after service of a responsive

4

pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.    This case was removed from the Circuit Court for St. Mary's County to this court on November 13, 2013, and at no point did Plaintiffs alert the court that they wanted to amend the complaint.    Indeed, Plaintiffs filed subsequent motions and documents in this court, (*see, e.g.,* ECF Nos. 4, 14, 32), never indicating to the court that they wished to file an amended complaint or that they had moved for leave to amend the complaint in the Circuit Court for St. Mary's County.    Moreover, the proposed amended complaint that Plaintiffs filed in the circuit court largely mirrors the original complaint.    (*See* ECF No. 60-5, Redlined Version of Amended Complaint).    Plaintiffs indicate in the motion for leave to amend that they wish to remove as a plaintiff Willie J. Morris, who is now deceased, remove Silver Goodwin as a defendant, and "include exhibits and to set forth transactions or events that have occurred since the filing of the pleading." (ECF No. 60-1, at 2).    Willie Morris has already been dismissed as a plaintiff in this action.    (ECF No. 37, at 1).    Silver Goodwin, Isaac Goodwin's mother, will also be dismissed from this lawsuit as the allegations in the complaint do not plead any cause of action against her and Plaintiffs admit as much by seeking to remove her as a defendant.    The exhibits that Plaintiffs seek to attach to the amended complaint mostly

5

pertain to Damaris Brown (*see* ECF Nos. 60-1, at 2 & 60-4); the undersigned dismissed all claims in the complaint related to Ms. Brown for the reasons explained in the memorandum opinion and order dated July 24, 2014. (ECF Nos. 36 & 37). Accordingly, the motion for leave to file an amended complaint will be denied.

### B. Motion to Dismiss by Defendant King

Defendant King moves to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim. (ECF No. 85).

Insofar as Defendant King contends that the court lacks personal jurisdiction, her motion is governed by Federal Rule of Civil Procedure 12(b)(2). When personal jurisdiction over a nonresident defendant is challenged by a Rule 12(b)(2) motion, "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). If jurisdiction turns on disputed facts, the challenge may be resolved after a separate evidentiary hearing, or the ruling may be deferred pending the introduction of evidence at trial relevant to the jurisdictional question. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Where, as here, a ruling is issued without conducting an

evidentiary hearing and based solely on the complaint, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396. In deciding whether the plaintiff has proved a *prima facie* case, all reasonable inferences arising from the proof must be drawn in favor of the plaintiff, and all factual disputes must be resolved in his or her favor. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

Where the defendant is a nonresident, a federal district court may exercise personal jurisdiction only if "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). The Maryland Long-Arm Statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002) (*citing Androutsos v. Fairfax Hosp.*, 323 Md. 634, 637 (1991)). This broad reach does not suggest that analysis under the long-arm statute is irrelevant; rather, it reflects that, "to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause." *Dring v.*

7

*Sullivan*, 423 F.Supp.2d 540, 545 (D.Md. 2006) (*quoting Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F.Supp. 116, 118–19 n.2 (D.Md. 1995)); *see also Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141 n.6 (2006) (although the "long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause," it is not "permissible to dispense with analysis under the long-arm statute"). To satisfy the long-arm prong of the analysis, a plaintiff must specifically identify a statutory provision that authorizes jurisdiction, either in the complaint or in opposition to a Rule 12(b)(2) motion. *See Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F.Supp.2d 649, 652 (D.Md. 2001); *Johansson*, 304 F.Supp.2d at 704 n.1.

The Maryland Long-Arm Statute provides, in relevant part:

> (a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
>
> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> > (1) Transacts any business or performs any character of work or service in the State;
> >
> > (2) Contracts to supply goods, food, services, or manufactured products in the State;
> >
> > (3) Causes tortious injury in the State by an act or omission in the State;

> (4) Causes tortious injury in the State
> or outside the State if he regularly
> does or solicits business, engages in
> any other persistent course of conduct
> in the State or derives substantial
> revenue from goods, food, services, or
> manufactured products used or consumed
> in the State.

Md. Code Ann., Cts. & Jud. Proc. § 6-103.

Plaintiffs assert in the opposition to Defendant King's motion to dismiss that jurisdiction is proper under Section 6-103 (b)(4). (ECF No. 94-1, at 5). Ms. King indicates that at the time of the events giving rise to the complaint, she was a resident of Virginia.[2] (ECF No. 85, at 5). She further argues that the complaint contains no allegations that she conducted business in Maryland, or derived any revenue from goods used or consumed in Maryland; thus, Defendant King contends that "[t]he court must find that [she] engaged in a persistent course of [conduct] in Maryland in order to exercise personal jurisdiction." (*Id.* at 6). Ms. King maintains that the conduct in which Plaintiffs allege she engaged is minimal and does not rise to the level of "persistent course of conduct" under Section 6-103(b)(4). Plaintiffs counter that Ms. King "has clearly and repeatedly participated in a 'persistent course of

---

[2] Ms. King indicates that she served on active duty in the military and was stationed in New York at the time she filed her motion to dismiss. (ECF No. 85, at 5). She asserts that she was served with the complaint while stationed in the army in New York. (*Id.*).

conduct' that is reckless" by defying an order by her Commanding Officer to cease communications with Defendant Goodwin, an order that post-dates the death of Katherine Morris. (ECF No. 94, at 2). According to Plaintiffs, King's activity included: (1) initiating and exchanging six emails with the decedent on May 2, 2012 over the course of three hours, using an alias; (2) placing three (3) phone calls to the decedent using Damaris Brown's cell phone on May 2, 2012; and (4) on March 27, 2012, sending a "friend" request on Facebook to Katherine Morris using the alias "Damaris Brown." (ECF No. 42 ¶¶ 71-74, 102 & ECF No. 94-1, at 2). Plaintiffs assert that Defendant King called Katherine Morris an "email gangster" in the May 2, 2012 email and stated in another email later that day that she has been intimate with Isaac Goodwin "regularly for the past 3 ½ years and we still communicate and we are trying to work things out as well and I'm definitely not his ex." (ECF No. 42 ¶ 74).

Plaintiffs have not established that King engaged in a "persistent course of conduct" in Maryland. The analysis in *Pharmabiodevice Consulting, LLC v. Evans,* No. GJH-14-00732, 2014 WL 3741692, at *4 (D.Md. July 28, 2014) applies:

> Essentially, [p]laintiff argues that jurisdiction under subsection (b)(4) is proper because "Evans purposefully and regularly solicited Charity Ogunsanya, a Maryland resident and owner of Pharmabiodevice, also a Maryland company, to persuade Ogunsanya to provide an employment

opportunity to Evans" by "regularly
initiat[ing] telephone calls and emails to
[p]laintiff in Maryland.[]" . . . The[]
contacts include two telephone calls and a
handful of emails exchanged between Evans
and Ogunsanya.[] *However, isolated
telephone calls and e-mails made from
outside Maryland into the state, without
more, are insufficient to demonstrate that
Evans regularly solicited business in
Maryland for purposes of establishing
personal jurisdiction over an out-of-state
defendant like Evans.* See, e.g., *Stover v.
O'Connell Associates, Inc.*, 84 F.3d 132, 137
(4th Cir. 1996) (recognizing that "the use of
a telephone to facilitate transactions
between remote locations serves as an
*alternative* to presence [and [t]o conclude
that such activity establishes presence in a
state would upset generally held
expectations"); *Ritz Camera Centers, Inc. v.
Wentling Camera Shops, Inc.*, 982 F.Supp.
350, 354 (D.Md. 1997) (no long-arm
jurisdiction when "contacts[] consist
entirely of telephonic (voice and facsimile)
exchanges and mail correspondence from
without the state"); *Leather Masters (PVT)
Ltd. v. Giampier Ltd.*, 836 F.Supp. 328, 331
(D.Md. 1993) ("without more, communications
made from outside the State to a Maryland
resident are not enough to justify the
exercise of personal jurisdiction over an
out-of-state defendant"); *Coating Engineers,
Ltd. v. Electric Motor Repair, Co.*, 826
F.Supp. 147, 149 (D.Md. 1993) (defendant's
telephone conversations with party in
Maryland did not constitute purposeful
activity within Maryland to confer
jurisdiction under the Maryland long arm
statute); *Craig v. General Finance Corp.*,
504 F.Supp. 1033, 1038-39 (D.Md. 1981) (in
personam jurisdiction does not exist over
person who placed various telephone calls
and mailed letters to forum state).

(emphasis added).   The conduct that Plaintiffs believe confers personal jurisdiction over Defendant King – namely, six email exchanges, multiple telephone calls, and a "friend" request on Facebook – simply does not rise to the level of persistent course of conduct to satisfy Section 6-103(b)(4).   *See, e.g., Chattery Intern., Inc. v. JoLida, Inc.*, Civ. No. WDQ-10-2236, 2011 WL 1230822, at *15 (D.Md. Mar. 28, 2011) ("Jolida asserts that Prylli has purposefully undertaken to destroy [JoLida] in Maryland, and has called and e-mailed Allen in Maryland about buying JoLida. . . . Prylli's calls and e-mails to Allen in Maryland expressing the desire to buy JoLida and possibly open a Maryland office were not significant commercial negotiations constituting purposeful activity.").   Moreover, subsection (b)(4) requires that the tortious injury be caused directly by a defendant or the defendant's agent.   The alleged facts in this case, while tragic, do not create a reasonable inference that the minimal exchanges between Katherine Morris and Ms. King caused her death.

Furthermore, even if subsection (b)(4) supplied a valid basis for jurisdiction, Defendant King has such limited contacts with Maryland that finding personal jurisdiction here would impinge on her basic due process rights.   A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum,

such that requiring the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer,* 311 U.S. 457, 463 (1940)); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Courts have recognized two types of personal jurisdiction: general and specific jurisdiction. Plaintiffs aver that specific jurisdiction has been established. (*See* ECF No. 94-1, at 11 ("Plaintiff has elected to pursue jurisdiction on the grounds of specific jurisdiction.")). Specific jurisdiction is appropriate when: "(1) the defendant purposely directed its activities toward residents of Maryland or purposely availed itself of the privilege of conducting activities in the state; (2) the plaintiff['s] cause of action arises out of or results from the defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction in the case is reasonable, that is, consistent with traditional notions of fair play and substantial justice." *Cole-Tuve, Inc. v. Am. Mach. Tools Corp.*, 342 F.Supp.2d 362, 366 (D.Md. 2004). Viewing the allegations in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, they still fail to make a *prima facie* showing that this court has specific jurisdiction over Defendant King. A handful of emails, phone calls, and a "friend request" on Facebook from an

out-of-state defendant into Maryland, without more, do not rise to the level of purposeful availment for purposes of establishing specific jurisdiction under the Due Process Clause. *See, e.g., Cape v. von Maur*, 932 F.Supp. 124, 128 (D.Md. 1996) ("Generally speaking, correspondence and phone calls from out-of-state defendants to in-state plaintiffs are insufficient as a matter of law to establish the minimum contacts that satisfy due process.").

Any attempt to premise personal jurisdiction on the conspiracy theory is similarly unavailing. Plaintiffs argue that "Defendant King made herself a party to this lawsuit by conspiring with Isaac Goodwin to commit tortious acts." (ECF No. 94, at 5). "The conspiracy theory of personal jurisdiction permits a court to exercise personal jurisdiction over a nonresident defendant without sufficient contacts with the forum if the nonresident defendant was part of a conspiracy that committed jurisdictionally sufficient acts within the forum." *AGV Sports Group, Inc. v. Protus IP Solutions, Inc.*, Civ. Action No. RDB-08-3388, 2009 WL 1921152, at *3 (D.Md. July 1, 2009); *Mackey v. Compass Marketing, Inc.*, 391 Md. 117, 127 (2006) ("[T]he conspiracy theory permits certain actions done in furtherance of a conspiracy by one co-conspirator to be attributed to other co-conspirators for jurisdictional purposes."). While the theory requires that the conspiracy have

14

sufficient ties to the forum state, it also, as a foundational matter, requires that the plaintiff allege a conspiracy. Here, Plaintiffs' conclusory allegations that Defendants King and Goodwin conspired to cause Katherine Morris harm, leading to her ultimate death, are insufficient. *See, e.g., Unspam Technologies, Inc. v. Chernuk*, 716 F.3d 322, 330 (4th Cir. 2013) ("[T]he plaintiffs' allegations of conspiracy are conclusory and speculative and do not satisfy the requirements for establishing a conspiracy theory of personal jurisdiction."). Based on the foregoing, Plaintiffs cannot establish that personal jurisdiction exists over Defendant King.

Even assuming personal jurisdiction exists over Defendant King, however, the alleged facts, while certainly sympathetic, are insufficient to state a claim for wrongful death. Judge Blake observed in *Grinage v. Mylan Pharmaceuticals, Inc.*, 840 F.Supp.2d 862, 872-73 (D.Md. 2011):

> In Maryland, a wrongful death action "may be maintained against a person whose wrongful act causes the death of another." Md. Code Ann., Cts. & Jud. Proc. § 3-902(a). Thus, a party can only bring a wrongful death action if a "wrongful act" occurred. *Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 79 n. 6 (2006). A wrongful act is "an act, neglect, or default including a felonious act which would have entitled the party injured to maintain an action and recover damages if death had not ensued." Md. Code Ann., Cts. & Jud. Proc. § 3-901(e).

The Court of Special Appeals of Maryland has also explained: "[w]e interpret the definition as meaning that the decedent must have been able to maintain a compensable action *as of the time of death*.   In other words, in order for an act to be wrongful, the decedent must have had a compensable action [against Defendant] as of death."   *Benjamin v. Union Carbide Corp.*, 162 Md.App. 173, 188-89 (2005) (emphasis in original).

Here, it is unclear what "wrongful act" of legal significance was perpetrated by Defendant King.   The complaint contains a number of allegations charging Defendant King with: initiating multiple phone calls and email exchanges with Katherine Morris; disclosing her adulterous relationship with Mr. Goodwin to her; and aggravating Katherine's already vulnerable state.   As Defendant King points out, however, Plaintiffs have not set forth a cause of action under which Katherine Morris may have recovered against Defendant King had her death not ensued.   (ECF No. 85, at 9) (emphasis added).   Plaintiffs invoke the "last clear chance" doctrine, arguing that Defendant King could have prevented the death.   Plaintiffs contend:

> Defendant[] should have understood the possible implications of [her] actions. King was 9 years senior to the deceased and none of them exercised the precautions of a reasonable man.   This indifference to life constituted negligence that negated the

16

> effect of the deceased Katherine Morris
> possible act of contributory negligence.

(ECF No. 94-1, at 13).

Plaintiffs are unable to avail themselves of the "last clear chance" doctrine. The last clear chance doctrine only allows a contributorily negligent plaintiff to recover damages from a *negligent* defendant if: (1) the defendant is negligent; (2) the plaintiff is contributorily negligent; (3) the plaintiff makes a showing of something new or sequential, which affords the defendant a fresh opportunity, of which he fails to avail himself, to avert the consequences of the original negligence. *Burdette v. Rockville Crane Rental, Inc.*, 130 Md.App. 193, 216 (2000). The well pleaded allegations in the complaint do not state a negligence claim against Defendant King, however. To state a claim for negligence, a plaintiff must allege that: (1) the defendant was under a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury or loss; and (4) the loss or injury proximately resulted from the defendant's breach of the duty. *Quigley v. United States*, 865 F.Supp.2d 685, 696 (D.Md. 2012); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002) ("a negligence claim must disclose that each of the elements is present in order to be sufficient"). As Defendant King points out, "Plaintiffs do not set out factually any relationship

17

between the Defendant and the decedent [] that would give rise to a duty on the part of [] Defendant." (ECF No. 85, at 8); *Hemmings v. Pelham Wood Ltd. Liability Ltd. Partnership*, 375 Md. 522, 552 (2003) ("In the absence of statute or special relationship, there is no duty to protect another from harm."). Moreover, taking the factual allegations as true, Plaintiffs have not pled a causal connection between the purported actions undertaken by Defendant King and the ultimate death of Katherine Morris. *See, e.g., Sindler v. Litman*, 166 Md.App. 90, 113 (2005) ("The doctrine of proximate cause is well established in Maryland, and its general principles, as delineated by the Maryland courts, support the rule set forth above that generally suicide is an independent superseding act or, in any event, not proximately caused by the negligent act, which precludes imposing liability on a third party for the suicide of another.").[3]  The well pled allegations in the complaint do not support a wrongful death claim against Defendant King, and the motion to dismiss will be granted.

---

[3] The general rule enunciated in *Sindler* regarding proximate causation in cases involving suicide is subject to an exception reflected in the Restatement (Second) of Torts § 455. "In essence, this provision 'assumes that negligent conduct caused delirium or insanity of another and addresses the question as to when the negligent actor is liable for suicide committed by the delirious or insane person.'" *Young v. Swiney*, 23 F.Supp.3d 596, 615 (2014) (*quoting Sindler*, 166 Md.App. at 117). The exception does not apply considering the facts alleged in the complaint.

### C. Defendant Isaac Goodwin

Plaintiffs request entry of default as to Defendant Isaac Goodwin. It is not apparent that Defendant Goodwin was properly served, however.[4] Moreover, it would be futile to enter default if the well pled allegations fail to establish his liability. Thus, the court will deny entry of default and instead dismiss the case against him considering that the allegations in the complaint pertaining to him largely parallel those against the other Defendants and, as stated above, those claims have been found insufficient to support a cause of action for wrongful death. *See Wallace v. Trost*, Civ. Action No. DKC 13-3473, 2014

---

[4] In response to this court's July 24, 2014 order requesting proof of service as to Defendant Goodwin, Plaintiffs offered: (1) Judge Densford's order allowing for service to be made by mailing and by delivery to Mr. Goodwin's place of business (ECF No. 83-4); and (2) the affidavit of James A. Davis, dated June 28, 2013, stating that the summons and complaint were mailed to Defendant Goodwin's last known home address (ECF No. 83-5). Plaintiffs' proof of service relates to service effected over a year ago, which may not have complied with Judge Densford's June 27, 2013 order. Specifically, Plaintiffs do not include any evidence to indicate whether or not Isaac Goodwin was working at the time of service, and thus whether they have complied with Judge Densford's June 27, 2013 order. The docket includes a certificate of service stating that the complaint along with a Petition for Annulment and a writ of attachment were left with a "slim blonde secretary at [the] front desk" of the law office of James E. Crawford, Jr. Esq. (ECF No. 51, at 3). There is no indication that a summons was included. Moreover, Mr. Crawford represented Isaac Goodwin in an earlier lawsuit brought by Marguerite Morris, which has been resolved. *See Morris v. Prudential Financial, Inc.*, Civ. Action No. DKC 12-1946. Mr. Crawford does not represent Isaac Goodwin in the instant lawsuit, nor does it appear that Isaac Goodwin worked at that address. The certificate does not appear to satisfy the second requirement for service under Judge Densford's order.

WL 4388389, at *5 (D.Md. Sept. 4, 2014) (dismissing claims against four defendants who did not move to dismiss because the claims were identical with respect to all defendants); *Hawkins v. Chick*, No. DKC 09-0661, 2009 WL 4017953, at *6-7 (D.Md. Nov. 19, 2009) (same).

The complaint asserts that on December 21, 2011, Katherine Morris notified Isaac Goodwin of her intent to commit suicide. (ECF No. 42 ¶ 50). Plaintiffs state that "Defendant Isaac Goodwin did not notify emergency personnel of that communication." (*Id.*). The next day, however, Katherine Morris allegedly informed her mother Marguerite Morris of her state of mind, and Marguerite Morris "responded by contacting emergency personnel [] at the University of Maryland." (*Id.* ¶ 51). The complaint states that Katherine Morris was then hospitalized for an emergency evaluation, and that Isaac Goodwin arrived in Maryland from military service on December 27, 2011 and attended a discharge planning meeting with Katherine and her family. (*Id.* ¶¶ 56-58). Plaintiffs assert that "during this emergency medical visit[,] he spent the day hours with Katherine Sarah Morris as her husband, opting to spend the overnights committing adultery with Latoya King at Ft. Belvoir, VA. This demonstrated a continuous ongoing disregard for the wellbeing of the

deceased." (*Id.* ¶ 61).[5]  According to the complaint, in March 2012, Katherine saw communications between Isaac Goodwin and Latoya King, from which she discovered the alleged adultery. The complaint states that the last known electronic communication from Isaac Goodwin to Katherine occurred on April 27, 2012, in which he told "the deceased that he loved her, wanted the marriage to work, and when she asked 'are you sure[,]' his response was 'have faith.'" (*Id.* ¶ 70).  Katherine purportedly sent additional electronic communications to him, to which he did not respond.

Plaintiffs assert that Isaac Goodwin did not exercise a duty of care and that he is liable for negligence.  As with Defendant King, it is unclear what "wrongful act" he committed, as defined in Section 3-901(e), against Katherine Morris. Plaintiffs rely on negligence, but even assuming Isaac Goodwin had a legal duty to prevent harm to Katherine, the alleged facts render implausible a proximate cause conclusion.  The crux of the allegations against Isaac Goodwin is that his adultery caused her to fall into a state of depression, ultimately culminating in her death.  As explained in *Sindler*, 166 Md.App. at 112, however, "[t]he act of suicide is generally considered to be a deliberate, intentional, and intervening act which

---

[5]  The complaint also states that the financial benefits of having a spouse while in the military motivated Isaac Goodwin to marry Katherine Morris.

precludes a finding that a given defendant is, in fact, responsible for the decedent's death." The *Sindler* court adopted the exception to this general principle contained in Section 455 of the Restatement:

> Section 455 of the Restatement provides an important exception to the general rule that suicide is a superseding intervening act or, in any event, that the negligent act was not the legal or proximate cause of the suicide. [] *The Restatement section assumes that negligent conduct caused delirium or insanity of another* and addresses the question as to when the negligent actor is liable for suicide committed by the delirious or insane person. Under § 455,
>
> *If the actor's negligent conduct so brings about the delirium or insanity of another as to make the actor liable for it*, the actor is also liable for harm done by the other to himself while delirious or insane, if his delirium or insanity
>
> (a) prevents him from realizing the nature of his act and the certainty or risk of harm involved therein, or
>
> (b) makes it impossible for him to resist an impulse created by his insanity which deprives him of his capacity to govern his conduct in accordance with reason.

*Id.* at 117 (emphases added). The allegations in the complaint simply do not support a plausible inference that any actions by Isaac Goodwin brought about delirium or insanity by Katherine Morris, resulting in her death. The court in *Sindler* explained:

> Under the Restatement exception, "a plaintiff must [plead] more than that the alleged negligent incident started a chain

22

> of circumstances that led to suicide."[]
> The plaintiff must [allege] that the
> defendant's action *caused insanity*, which
> prevented the decedent from realizing the
> nature of the act of suicide or resulted in
> the decedent's having an uncontrollable
> impulse to commit suicide, "in the sense
> that the decedent could not have decided
> against and refrained from killing
> [herself], and because of such
> uncontrollable impulse, the decedent
> committed suicide."

*Id.* at 117-18 (emphasis added). Here, the allegations do not

trigger the application of this exception.

Any attempt to premise the wrongful death claim on the tort

of intentional infliction of emotional distress is similarly

unavailing. Judge Titus explained in *Vance v. CHF Intern.*, 914

F.Supp.2d 669, 682 (2012):

> In order to succeed on an intentional
> infliction of emotional distress claim,
> Plaintiffs must demonstrate (a) intentional
> or reckless conduct that is (b) outrageous
> and extreme (c) causally connected to (d)
> extreme emotional distress. *See Caldor v.
> Bowden*, 330 Md. 632, 641-42 (1993).
> Maryland courts "have made it clear that
> liability for the tort of intentional
> infliction of emotional distress should be
> imposed sparingly, and its balm reserved for
> those wounds that are truly severe and
> incapable of healing themselves." *Id.* at
> 642. [] "*In order to satisfy the element of
> extreme and outrageous conduct, the conduct
> 'must be so extreme in degree as to go
> beyond all possible bounds of decency, and
> to be regarded as atrocious, and utterly
> intolerable in a civilized society.'*"
> *Mitchell v. Baltimore Sun Co.*, 164 Md.App.
> 497, 525 (2005) (*quoting Batson v. Shiflett*,
> 325 Md. 684, 733 (1992)).   The emotional

> distress "must be so severe that 'no reasonable man could be expected to endure it.'" *Id.* (*quoting Harris v. Jones*, 281 Md. 560, 571 (1977)). "One must be unable to function, one must be unable to tend to necessary matters." *Id.* (quotation omitted). Finally, Maryland courts "have said that a complaint alleging intentional infliction of emotional distress must be pleaded with specificity." *Id.* (*citing Foor v. Juvenile Sevs. Admin.*, 78 Md.App. 151, 175 (1989)).

(emphasis added); *see also Foor v. Juvenile Servs. Admin.*, 78 Md.App. 151, 175-76 (1989) ("Each of the[] elements [for intentional infliction of emotional distress] must be pled and proved with specificity. It is not enough for a plaintiff merely to allege that they exist; [s]he must set forth facts that, if true, would suffice to demonstrate that they exist.").

Here, the complaint states that "[a]s a direct and proximate result of the Defendants['] negligence and *continued intentional infliction of emotional abuse*, marital fraud, perpetration of internet fraud, and adulterous relationships[,] Katherine Sarah Morris was mentally coerced in[to] committing suicide." (ECF No. 42 ¶ 20) (emphasis added); (*see also id.* ¶ 73 ("The Defendants continued to mentally batter and intentionally inflict more emotional pain and suffering.")). At best, the complaint alleges intentional infliction of emotional distress in conclusory terms; Plaintiffs do not plead with any specificity the requisite outrageous and extreme intentional

24

action or sufficient facts to demonstrate that any emotional
distress was severe. *See Vance*, 914 F.Supp.2d at 683 ("Maryland
courts have held that there is a high burden imposed by the
requirement that a plaintiff's emotional distress be severe. []
Plaintiffs are required to allege a severely disabling emotional
response that includes with reasonable certainty the nature,
intensity or duration of the alleged emotional injury."
(internal quotation marks omitted)); *Templeton v. First Tenn.
Bank, N.A.*, Civ. No. WDQ-09-3280, 2010 WL 2292493, at *5 (D.Md.
2010) (granting motion to dismiss where the plaintiff alleged
that she suffered "severe mental anxiety" and "severe mental
distress for which she inured medical costs," holding that
"[w]ithout more, [the plaintiff's] allegations are, as a matter
of law, insufficient to constitute severe emotional distress").
The facts alleged in the complaint do not establish that Isaac
Goodwin's (or Latoya King's) conduct was so extreme and
outrageous as to state a claim for intentional infliction of
emotional distress. *See, e.g., B.N. v. K.K.*, 312 Md. 135 (1988)
(intentional exposure of plaintiff to transmission of herpes was
outrageous); *Young v. Hartford Acc. & Indem.*, 303 Md. 182 (1985)
(insurer's insistence that plaintiff submit to psychiatric
examination calculated to harass the plaintiff and to either
force her to abandon her claim or to commit suicide was deemed
outrageous). Because the complaint does not allege a wrongful

death claim against Isaac Goodwin, the action will be dismissed as to him as well.

## IV.   Conclusion

For the foregoing reasons, the motions for leave to file an amended complaint and for entry of default against Defendant Goodwin will be denied.   The motion to dismiss filed by Defendant King will be granted.   A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

26